Wanamaker, J.
In September, 1912, the people of Ohio adopted as part of their constitution a civil service amendment, designated as Section 10 of Article XV, as follows:
“Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision.”
Pursuant to such civil service amendment, the general assembly of Ohio passed a civil service act, now known as Section 486-1 et seq., General Code, which, being subject'to the referendum, became a law August 8, 1913. The parts of said act pertinent to the sole question involved in this case are as follows:
“Section 19. The mayor or other chief appointing authority of each city in the state shall appoint *346 three persons, one for a term of two years, one for four years, and one for six years, who shall constitute ' the municipal civil service commission of such city and of the city school district in which such city is located. * * * ' If the appointing authority of any such city fails to appoint a civil service commission or commissioner as provided by law within sixty days after he has the power to so appoint, or after a vacancy exists, the state civil service commission shall* make the appointment, and such appointee shall hold office until the expiration of the term of the appointing authority of such city and until the successor of such appointee is appointed and qualified.”
• This whole case turns on the construction of the latter provision of Section 19 (Section 486-19, General Code), and the query is whether or not the sixty-day limitation is directory or mandatory.
The act of the general assembly, as heretofore noted, became a law August 8,'1913. The sixty-day limitation in Section 19 would expire October 7. The appointment by the mayor was not made until November 17, 1913, at which time he appointed the defendants in error, known as the “George Board.”
In January, 1914, William H. Webster became mayor of Zanesville, and on January 8, as such mayor, attempted to appoint the plaintiffs in error, known as the “Bailey Board,” as civil service commissioners for Zanesville. This situation gives rise to the question heretofore stated.
It must be presumed that the legislature,' in the enactment of this law, had in mind not only the *347 civil service amendment of the Constitution, known as Section 10 of Article XV, but also the home-rule amendment, known as Article XVIII. Therefore, they proceeded to designate the highest elective executive officer of the city as the proper authority to appoint the municipal civil service commission.
In conferring this power, however, it is urged that they intended to confer it for the period of only sixty days, and if not exercised within that time it was lost to the mayor and the municipality; that by force of the statute it passed to the state civil service commission, and that after said sixty days they were the sole and only power authorized to appoint the commission to serve during the remainder of the mayor’s term of office.
We cannot agree with this contention. We believe it was the legislature’s purpose to confer upon the mayor the right and duty to appoint the municipal civil service commission in keeping with the home rule provided for in Article XVIII of the Constitution, as adopted September, 1912. The sixty-day provision was not a limitation as to the power of the mayor, but rather a limitation upon the time within which he should exercise the power or suffer the loss thereof by the-exercise of that power through the state civil service commission. In short, the state civil service commission was made a sort of policeman to see to it that the mayor performed his duty within the sixty-day limitation, and if he failed so to do the state civil service commission then had the option of making the appointment so as to guarantee to the municipality a civil *348 service commission in case the mayor failed or refused to act.
It must be remembered that this was a new law; that the publication of the laws is very often considerably delayed. The public and public officials are often not advised, even in the exercise of reasonable diligence, as to what the laws of the state are until publication thereof has been made. Clearly the state board might have, after said sixty-day period, at once exercised that option and made the appointment. Their authority in that behalf after the expiration of sixty days was not only concurrent with that of the mayor, but paramount thereto. But we see nothing in this act, its letter or its spirit, when interpreted with reference to the home-rule amendment, that calls for a deprivation of municipal appointment at the end of sixty days after he has the power to appoint.
We hold, therefore, that the sixty-day provision in this case was directory only; that it was a permanent power in the mayor, exercisable at any time during his term, unless the state civil service board saw fit to exercise its power of appointment under said act after said sixty-day period. Said state board not having seen fit to exercise such power of appointment, and all the while conferring with the mayor with reference to his exercise of said power, and the mayor having exercised it with the approval of said state board, and said state board further in nowise challenging the mayor’s right in that behalf, we find that the defendants in error were regularly and validly appointed as the mu *349 nicipal civil service commission of the ■ city of Zanesville, and the judgment below is affirmed.

Judgment affirmed.

Nichols, C. J., Johnson and Donahue, JJ., concur.